**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STANLEY S. STEPNEY, | : | |
| | : | Civil Action No. 05-1941 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

      STANLEY S. STEPNEY, Petitioner <u>Pro</u> <u>Se</u>
      #425657
      Northern State Prison
      168 Frontage Road
      Newark, New Jersey 07114

      MARK P. STALFORD, ESQ.
      Monmouth County Prosecutor's Office
      71 Monument Park
      Freehold, New Jersey 07728-1789
      Counsel for Respondents

**CHESLER**, District Judge

      This matter is before the Court on Petitioner Stanley S. Stepney's ("Stepney") petition for habeas corpus relief under 28 U.S.C. § 2254. For reasons discussed below, the petition for habeas corpus relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.  BACKGROUND

A.  Statement of Facts

Federal courts in habeas cases are required to give deference to the factual findings of both the state trial and appellate courts.  Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Sumner v. Mata, 449 U.S. 539, 546 (1981)(§ 2254 makes no distinction between the factual determinations of a state trial court and those of a state appellate court).  See also 28 U.S.C. § 2254(e)(1).[1]  Accordingly, as the facts of this case were recounted below, this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation:

> Tried to a jury, defendant was convicted of third-degree eluding, contrary to the provision of N.J.S.A. 2C:29-2b, and fourth-degree obstructing the administration of law, contrary to the provision of N.J.S.A. 2C:29-1.  On February 16, 2001, defendant was sentenced to a term of three years probation conditioned upon service of thirty days in the Monmouth County Correctional Institution on the eluding conviction, a one-year concurrent probationary term on the disorderly persons resisting conviction and mandatory financial penalties and assessments.
>
> The trial testimony was dramatically disputed.  Neptune Police Officer Eugene Stewart testified that at about 1:00

_____

[1]  Section 2254(e)(1) provides: In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

a.m. on November 6, 1998, he was on road construction detail
on State Highway 33 when a white pickup passed him.  The
truck did not have a tailgate, and Stewart did not see any
rear license plate.  He recognized defendant as the driver,
and was aware that a bench warrant had been issued for
defendant's arrest based on his failure to appear in the
Neptune Municipal Court.  Officer Stewart radioed police
headquarters with the information, and Patrolman Thomas
Rafi, who was stationed nearby on Highway 33, was dispatched
to stop the truck.  Within a minute or two Rafi saw the
truck, which had a plywood rear end instead of a tailgate
and the license plate mounted on the left bumper.  Rafi
activated the overhead lights and siren and pulled out to
stop the truck.

When the truck stopped, Rafi left his patrol car and
approached on the driver's side while his backup, Officer
Richard Larrison, positioned himself on the passenger side.
Defendant was seated in the driver's seat, and a young boy
seated in the front passenger seat.  Rafi asked for driving
credentials, and defendant produced the registration,
insurance card and his Division of Motor Vehicles
identification card.  After Rafi returned to his police
vehicle with the credentials and contacted headquarters, he
was told that defendant did not have a valid driver's
license and that arrest warrants had been issued the
previous day by the Neptune Municipal Court.  Rafi walked
back to the truck and told the defendant to shut off the
engine.  Defendant refused.  Rafi repeated his instruction,
but again defendant refused.  Rafi tried to open the
driver's door, but it was locked.  He warned defendant that
if he did not cooperate, additional charges would be filed
included resisting arrest.  Defendant said that he was
afraid for his life and was not going to leave the truck.
Suddenly, he put the truck in gear and accelerated.  Rafi
and Larrison returned to their patrol cars and pursued
defendant.

Rafi testified that the truck went through a stop sign and
continued at an excessive speed in a residential area.
After stopping to let out the juvenile, defendant took off
again.  He proceeded at a normal speed, stopped at a stop
sign, made a left-hand turn and stopped.  Rafi approached
the vehicle with his gun drawn and ordered the defendant to
raise his hands.  Defendant did not comply even though Rafi
stated the instruction twice.  After Rafi shattered the
passenger side window of the truck with a center punch, the
defendant finally unlocked the driver's side door.  He was

3

taken out of the vehicle, arrested, handcuffed and
transported to police headquarters.

Defendant testified that he was driving with his son Joshua
when Officer Rafi stopped his vehicle.  After he gave Rafi
his driving credentials, he was ordered to leave the truck.
Defendant testified he saw Rafi's hand on his gun and asked
if there was a problem.  Rafi replied, "If you don't get
your nigger ass out of that car right now, I guarantee you,
you'll be facing charges."  Defendant said that based on
this threat and his history with the Neptune Police
Department he believed both he and his son were in danger,
and, for this reason, he drove off.  Defendant testified he
did not realize that the police were following him until
after he let his son off near home.  He claimed Rafi came
toward him with his gun drawn, "screaming and yelling at the
top of his lungs," and shattered the truck passenger window.
After he was handcuffed and taken to police headquarters,
defendant claimed he did not cooperate because he believed
he had a right to be silent.

(Respondents' Appendix at No. 14, the Appellate Division's

Opinion filed December 8, 2003).

B.  Procedural History

On March 10, 1999, Stepney was indicted by a Monmouth County

Grand Jury on charges of second degree eluding, second degree

endangering the welfare of a child, fourth degree resisting

arrest, and fourth degree obstructing the administration of law.

About five months before trial, Stepney's privately retained

counsel moved to withdraw representation.  The motion was granted

by the Honorable Patricia DelBueno Cleary, J.S.C., on July 7,

2000, but she appointed a public defender as standby counsel.

Trial proceeded before the Honorable Ira E. Kreizman, J.S.C.

for three days in December 2000.  On December 19, 2000, a jury

convicted Stepney of third degree eluding and resisting arrest, a

disorderly persons offense.  Judge Kreizman sentenced petitioner on February 16, 2001 to three years probation conditioned upon serving 30 days in the Monmouth County Jail on the eluding charge, and one-year probation for the resisting arrest charge to run concurrently.  However, on October 26, 2001, Stepney's probation was terminated for violation of probation conditions.  The trial court imposed a five-year prison term to run concurrent with a 10-year prison term imposed pursuant to an earlier conviction.

On May 7, 2001, prior to the probation violation, Stepney had filed a direct appeal from his conviction.  The Appellate Division affirmed the conviction by opinion filed on December 8, 2003.  The New Jersey Supreme Court denied certification on February 27, 2004.

Stepney filed this § 2254 habeas petition on or about March 23, 2005.

## II.  STATEMENT OF CLAIMS

Stepney raises the following claims for habeas relief:

Ground One: His waiver of counsel was not made knowingly and intelligently.

Ground Two: The trial was tainted because the trial judge failed to question a juror as to possible misconduct.

Ground Three: Defendant was absent when the court re-charged the jury after a jury question was presented during a court-ordered break.

Ground Four: Neither the indictment or the state charge allege facts supporting all of the substantive elements of the crime of eluding.

Ground Five: The jury's verdict was against the weight of the evidence with respect to the eluding charge.

Ground Six: Defendant's sentence is manifestly excessive.

The State answered the petition alleging that petitioner's grounds for habeas relief are without merit or fail to state a claim of federal constitutional deprivation.  Respondents also assert that petitioner has failed to exhaust his available state court remedies with respect to Grounds Four, Five and Six.

The Court notes that Stepney raised each of these claims in his direct appeal, but the Appellate Division found them to be without sufficient merit to warrant discussion in a written opinion pursuant to N.J.Ct.R. 2:11-3(e)(2).  (December 8, 2003 Appellate Division Opinion, Resp. App. at No. 14, pg. 17). However, even if these claims were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State."  See also Lambert v. Blackwell, 134 F.3d 506, 514-15 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001)(a district court may deny a petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is perfectly clear that an applicant does not raise even a colorable federal claim").

### III.  STANDARD OF REVIEW FOR § 2254 CASES

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Stepney is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122

S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  Under the "unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state

court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.   ANALYSIS

A.   Valid Waiver of Representation

Stepney first asserts that his waiver of trial counsel was not made knowingly and intelligently. Specifically, Stepney claims that the record does not contain an express or implied waiver of counsel, but instead, was imported from a prior separate criminal proceeding. He asserts that the trial court did not conduct a "searching and painstaking inquiry" before ruling that petitioner proceed without counsel. (Petition, ¶ 12A, Ground One).

This issue was raised on direct appeal and the Appellate Division noted the facts as follows:

> In January 2000, defendant retained private counsel to represent him, but on July 7, 2000, Judge Patricia Delbueno Cleary granted the attorney's application to be relieved based on his assertions defendant was uncooperative and had not paid counsel fees. Defendant was not present when the motion was heard. When he later appeared for a pre-trial hearing, he protested that he had not received notice of the application and objected to his counsel being relieved.

11

> However, during the course of the colloquy with the judge,
> defendant stated, "You know what?  It doesn't matter.  I
> don't want him anymore, judge."  When defendant said that he
> was indigent, he was advised of his right to make
> application with the Office of the Public Defender for
> appointment of an attorney.

(Resp. App. at No. 14, page 7).[2]

Judge Cleary then proceeded to inform Stepney in detail as to the nature of each charge against him and the maximum punishment for each offense.  (2T 28:16-29:16).  The judge further stated that she would sign for an order for standby counsel.  (2T 29:17-24).  She also recited her finding that petitioner was able to represent himself:

> Mr. Stepney has testified in court that he is a graduate of
> Monmouth College with a degree in Chemistry.  I find that he
> knows what he is doing here.  He has filed affidavits that I
> find have been written very well.  He has represented
> himself in prior cases where he has ... cross-examined
> witnesses ... given opening and closing statements.
>
> Mr. Stepney knows the procedures of the courts and if he
> wants to bring in his own counsel, he may bring in his own
> counsel ...  If he doesn't wish to bring in counsel, he will
> not.

(Resp. App. at No. 14, pp. 8-9).

Judge Cleary did appoint a stand-by counsel for Stepney to provide legal assistance during the trial.  The trial commenced

---

[2]  This Court notes that Mr. Stepney received notice of the hearing on his attorney's motion to be relieved as counsel.  His counsel wrote to Mr. Stepney, and told Mr. Stepney about the court date for the hearing at a similar motion in municipal court.  Therefore, Stepney was on notice and was duly informed about the motion to be relieved of counsel before the hearing. (July 10, 2000 Pre-Trial Transcript, 6:1-7:24; 8:3-9:1).

on December 12, 2000, and the trial judge, the Honorable Ira E. Kreizman, J.S.C., spoke to Stepney about the participation of the stand-by counsel.  The Appellate Division found this colloquy pertinent in determining that Stepney's waiver of counsel was knowingly and intelligently made.

> THE COURT: The defendant has, I'm told represented himself in the past in other matters before the Court.  Mr. Stepney I want to find out from you, just what kind of involvement you want to have Mr. Eisler be involved in this case? ...
>
> You want him to, for example, object to certain questions that might be asked that he thinks are improper? You want him to aid you in questioning a witness or cross-examining, you tell me?
>
> DEFENDANT: Just for the record, Your Honor, in this case [I've been] ordered to represent myself.
>
> THE COURT: You've been ordered to represent yourself and Mr. Eisler is standby.
>
> DEFENDANT: Right he was assigned.  He was ordered to standby as standby counsel.  I'm not even sure what that means and when I asked Mr. Eisler to what extent he plays a part in the actual preparation of the case, etc., he said that he has no obligation to do any of that.
>
> And as far as I understand, my understanding is, he's just simply here to observe.
>
> THE COURT: No. He's here to observe and he's also there to give you advice, if you need it.
> During the course of the trial that's what a standby counsel is and that's what I'll tell the jury.
> He provides advice to you if you need it.  For example, do you want to cross examine a witness?  You might want to ask him, should I cross-examine?  What do you think?
> You might want to know about a certain case that is cited by somebody.  He will tell you about that.  There's identification issue, if there is an issue as to prior criminal history, I don't know.  But, if you need that kind of advice he's there for that purpose.

Now what I'm asking you though is whether or not you want him just to provide you with that advice. He's not going to try the case for you, but he may feel compelled to object to a certain question that may be asked because it's either leading or hearsay or who knows what and I don't know if you want to have him do that or you want him not to do it?

DEFENDANT: I really don't know enough to answer that question. ... Except that we really haven't had a chance to talk at length about the trial. I would like to maybe have a chance to talk to him.

THE COURT: We are not going to do that.

DEFENDANT: Then I don't know how to answer that.

THE COURT: Mr. Eisler will only provide advice as counsel to him, that's all.

MR. EISLER: If I may, ... I don't want to get in an adversarial situation with my client.
      I would observe to the Court that some of what he's just said is not, doesn't square with my understanding of conversations he and I have had, but I think I can let it just rest at that, if the Court needs anything more from me, I'm happy to give it.

THE COURT: I'm going to tell the jury that you are here because another Judge has directed that you be here as standby counsel, but Mr. Stepney is going to represent himself and what your -- your involvement in the case would be just to provide him with certain legal information during the course of the trial and you will not be participating in the direct relationship with the Court or the jury. Okay.

DEFENDANT: Thank you.

(Resp. App. at No. 14, pp. 9-11; December 12, 2000 Trial

Transcript 3:8-6:6).

The Appellate Division also considered the fact that Stepney

raised this same issue regarding self-representation in another

case before the court on appeal. In that action, the Appellate

14

Division found a knowing and intelligent waiver of counsel that
did not violate the Sixth Amendment's right to counsel.  In
reaching the same determination in the instant case, the
Appellate Division repeated its ruling:

> With respect to defendant's arguments relating to his
> conviction and original sentence, the record discloses a
> knowing and intelligent waiver of right to counsel.  On
> August 25, 1997, defendant was arraigned on the indictment
> and placed under oath by the arraignment judge.  He
> testified he was thirty-five years old and he had completed
> his third year of chemistry at Monmouth College.  Clearly,
> he could read, write and understand the English language.
> He represented himself in court on three prior occasions and
> stated he had "briefly" studied law.  The judge gave
> defendant the opportunity to engage counsel, noting that his
> wife had a lawyer representing her.  The judge further
> explained that defendant had a Sixth Amendment right to be
> represented by counsel and that any waiver had to be knowing
> and voluntary.  He described the difficulty inherent in
> self-representation because of the need for compliance with
> the Rules of Court and Rules of Evidence.  Finally, he
> advised defendant of the maximum penalties if he were
> convicted of the charges.  Following this <u>voir</u> <u>dire</u> the
> judge stated:
>
>> I'm satisfied that the nature of the court's inquiry
>> here of Mr. Stepney has been both searching and
>> painstaking.  The court concludes that the intellectual
>> capacity of Mr. Stepney is exceptional.  He has
>> proceeded to the level of his third year in college
>> with background in the sciences, and has made a freely
>> arrived at choice to proceed in the matter as his own
>> counsel.
>
> We are satisfied that a searching and painstaking inquiry
> was conducted as to the waiver of right to counsel
> consistent with <u>State v. Crisafi</u>, 128 N.J. 499, 509-12
> (1992).  Defendant's reliance upon our decision in <u>State v.
> Slattery</u>, 239 N.J. Super. 534 (App. Div. 1990) is misplaced.
> In that case we found an obvious failure by the defendant to
> intelligently waive his right to counsel and a total
> inability to represent himself.  In this case, however,
> defendant possessed sufficient intelligence and repeatedly
> waived his right to an attorney and experience from

> previously representing himself in similar cases.  Moreover,
> the trial record does not disclose major deficiencies
> comparable to <u>Slattery</u>.  Defendant was not "left floundering
> in an uncharted sea."  <u>Id</u>. at 549.

(Resp. App. at No. 14, pp. 12-13).

In this case, the Appellate Division found Stepney's Sixth

Amendment claim to be a "replay" of his earlier case with the

very same issue then raised on appeal.  The court held:

> Our review of the record in this case again satisfies us
> that defendant had the requisite intellect, ability and
> experience to represent himself.  He opened to the jury,
> cross-examined three witness [sic], conducted a direct
> examination of four witnesses and delivered a summation to
> the jury.  His defense was more than adequate.  Indeed, the
> fact that he was acquitted of the indictable charges and
> convicted of lesser-included offenses illustrates
> defendant's skill in jury persuasion.
>
> The record satisfies us that defendant knowingly and
> voluntarily waived his right of counsel following the order
> relieving his private attorney.  Despite his assertions of
> indigency, defendant made no application for a public
> defender.  He accepted and received legal assistance by a
> public defender during his trial.  There was no violation of
> his constitutional right to counsel.

(Resp. App. at No. 14, pg. 13).

The Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have

Assistance of Counsel for his defense."  U.S. Const. amend. VI.

The Supreme Court has recognized that the Sixth Amendment also

guarantees the right of self-representation, as "the Constitution

does not force a lawyer upon a defendant."  <u>Faretta v.</u>

<u>California</u>, 422 U.S. 806, 814 (1975).  The rights embodied in the

Sixth Amendment "grant[] ... [an] accused personally the right to

16

make his defense." Id. at 819.  The Court reasoned that although the Sixth Amendment was intended as a protection for the defendant, "thrust[ing] counsel upon the accused against his considered wish, ... violates the logic of the Amendment." Id. at 820.  Thus, the court cannot require a defendant to accept capable representation if he is adamant about proceeding pro se; rather, the court can only ensure that the defendant fully understands the dangers of proceeding without counsel when he elects to represent himself.  Id. at 835.  Consequently, the Sixth Amendment embodies two competing rights because exercising the right to self-representation means waiving the right to counsel.  See Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

> It is axiomatic that a criminal defendant's waiver of a constitutional right must be voluntary, knowing and intelligent.  Therefore, the constitutional right of self-representation in a criminal case is conditioned upon a voluntary, knowing and intelligent waiver of the right to be represented by counsel.

Buhl, 233 F.3d at 798.  Further, courts should not presume acquiescence in the loss of such a fundamental right; rather, they should indulge every reasonable presumption against a waiver of the right to counsel.  United States v. Stubbs, 281 F.3d 109, 117 (3d Cir.)(citations omitted), cert. denied, 535 U.S. 1028 (2002).  Moreover, because the right to counsel is fundamental to due process, its denial can never be harmless error.  Id.

"Because of the importance of trial counsel, the United States Supreme Court has 'imposed the most rigorous restrictions

on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial.'" State v. Crisafi, 128 N.J. 499, 510 (1992)(*quoting* Patterson v. Illinois, 487 U.S. 285, 298 (1988)).  The Supreme Court of the United States has held that:

> To be valid such waiver [of trial counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.  A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 724 (1948)(plurality opinion).

Here, in reviewing petitioner's claim on direct appeal, the state appellate court examined the trial record as well as noting Stepney's earlier appeal in another case before the same court in which Stepney raised the very same issue of self-representation without voluntary waiver.  The Appellate Division quoted extensively from its earlier decision.  It is apparent from a review of the record that the state courts applied the basic standard as set forth by the Supreme Court in Faretta, as well as the state court standard in Crisafi.  The Appellate Division determined that the trial judge conducted a thorough and searching inquiry and that Stepney waived his right to counsel knowingly and intelligently.  Thus, this Court finds that the

18

state courts' inquiry met the applicable federal standards with respect to a knowing waiver of counsel and Stepney clearly made a knowing and intelligent waiver.  There is no indication that the state courts unreasonably applied established federal law in reaching its decision, or that the state court decision was based on an unreasonable application of the facts in light of the evidence presented at the trial proceedings.  Indeed, it was readily apparent that Stepney had represented himself on prior occasions and that he was very capable in conducting his defense during trial.  Stepney had been informed of his right to counsel and the consequences of proceeding <u>pro</u> <u>se</u> at trial on prior occasions.  This was not a new or unfamiliar concept to petitioner, especially considering the fact that he raised this very same argument on appeal in another action.

Therefore, Stepney has not demonstrated that the state court opinion, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly, this first claim for habeas relief is denied.

B.  <u>Juror Misconduct Issue</u>

In his next ground for habeas relief, Stepney asserts that his trial was tainted because the trial judge failed to question a juror as to possible misconduct or bias.  Stepney raised this argument on the third day of his state court trial, as well as on

19

direct appeal.  The Appellate Division reviewed Stepney's argument to the trial court, which was raised by Stepney in the following manner:

> STANDBY COUNSEL: [Defendant] drew my attention to concern that he had with regard to jurors...
>
> DEFENDANT: Just one juror. ... Her name is Mrs. Cloose or Miss Class —-
>
> THE COURT: Juror number 13, what about it?
>
> DEFENDANT: Juror Number 13.  She appeared to have a very cordial communication with two of the officers [who testified the previous day as the State's witnesses] ...
>
> THE COURT: Oh come on.  We are not getting involved in that stuff.
>
> DEFENDANT: I just wanted to state it on the record.
>
> THE COURT: Say anything you want on the record, don't point fingers. ...What is it she did?  She talked to the officer?
>
> DEFENDANT: Well, I mean she told you, you questioned her, she doesn't know any of the officers.  She obviously does know the officer.
>
> THE COURT: Why did she obviously know the officer?
>
> DEFENDANT: Okay, I won't say obviously know them.
>
> THE COURT: Well you said obviously.  Why she obviously knows them you are going to be held to the words you use?
>
> DEFENDANT: I will.  I'll be glad to use the words that I use.
>
> THE COURT: Why did she obviously know them?
>
> DEFENDANT: She had cordial conversations with him.
>
> THE COURT: With who?
>
> DEFENDANT: And signals Mr. Rafi.

THE COURT: Signals?  What kind of signals?

DEFENDANT: You know, just waves and head nods which I observed personally.  I mean she can be asked again, you know, under oath or –

THE COURT: I'll do that.  There -- okay.

(Resp. App. at No. 14, pp. 14-15; December 14, 2000 Trial Transcript 6:13-8:7).

However, the trial judge did not conduct a voir dire of juror no. 13.  Stepney did not renew his objection or raise this concern again with the trial judge until he raised it on direct appeal.  Stepney contends that the failure of the trial judge to question the juror on possible bias constituted reversible error and violated his Sixth Amendment right to an impartial jury.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. CONST. AMEND. VI.  The right to an impartial jury is applicable to the States through the Fourteenth Amendment.  See Morgan v. Illinois, 504 U.S. 719, 726 (1992); Duncan v. Louisiana, 391 U.S. 145 (1968).

Extra-jury contact poses a serious possibility of prejudice.  "It has long been recognized that when jurors are influenced by the media and other publicity, or when they engage in communications with third parties, these extra-record influences pose a substantial threat to the fairness of the criminal

proceeding because the extraneous information completely evades
the safeguards of the judicial process." United States v. Resko,
3 F.3d 684, 690 (3d Cir. 1993).  "[A]ny private communication,
contact, or tampering directly or indirectly, with a juror during
a trial about the matter pending before the jury is ... deemed
presumptively prejudicial, if not made in pursuance of known
rules of the court and the instructions and directions of the
court made during trial, with full knowledge of the parties."
Remmer v. United States, 347 U.S. 227, 229 (1954).

       This presumption of prejudice is not conclusive.  The
government bears the burden of rebutting the presumption by
showing that the "improper communication did not and will not
prejudice the defendant."  United States v. Vega, 285 F.3d 256,
266 (3d Cir. 2002).

       The trial judge has discretion to determine "[w]hether and
to what extent a juror should be questioned regarding the
circumstances of a need to be excused." United States v. Reese,
33 F.3d 166, 173 (2d Cir. 1994), cert. denied, 513 U.S. 1092
(1995).  "The more speculative or unsubstantiated the allegation
of misconduct, the less the burden to investigate." United
States v. Bertoli, 40 F.3d 1384, 1395 (3d Cir. 1994)(quoting
United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985)).

       Here, the trial judge did not investigate the alleged juror
misconduct as stated.  Stepney was the only person who observed

22

the alleged interaction between Juror No. 13 and Officer Rafi, which purportedly involved waving and nodding heads at each other.  The Appellate Division found, however, that since petitioner failed to remind the trial judge to question the juror, petitioner "let the matter drop" because he did not believe it was of real importance, or "alternatively, refrained from raising the issue again in order to set up a ground of appeal."  The Appellate Division concluded that Stepney waived the juror misconduct issue by his inaction at trial.  (Resp. App. at No. 14, pp. 16-17).

Having reviewed the trial record, this Court finds that the state court's decision, when evaluated objectively and on the merits, did not result in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  First, there was no credible evidence that the juror knew the officer.  Stepney conceded that, on the initial jury voir dire, the juror stated she did know any of the officers.  Stepney also failed to show that the alleged "cordial communication", i.e., waves and nods, had the capacity to influence jury deliberations.  Thus, Stepney's allegation was purely speculative and unsubstantiated and there was no need to question the juror.  Furthermore, there was no showing of prejudice to Stepney.  As noted earlier, Stepney was convicted on a lesser degree of the offenses initially charged.

Consequently, this Court finds no constitutional violation in the trial court's failure to question a juror on an unsubstantiated speculation by petitioner with respect to a casual and polite wave and nod of the head between the juror and the officer.  This second claim for habeas relief will be denied accordingly.

C.   Recharge on Jury Question Outside Petitioner's Presence

Next, Stepney states that he was absent when the trial court gave a recharge to the jury after they came back with a question during a court-ordered break.  He states that he was not informed of the jury question and insufficient time was given for Stepney to return.  The Appellate Division found this claim, as raised by Stepney on direct appeal, to be without sufficient merit to warrant discussion in a written opinion.  (Resp. App. at No. 14, pg. 17).

Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

24

The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." <u>Smith v. Horn</u>, 120 F.3d 400, 416 (1997), <u>cert</u>. denied, 522 U.S. 1109 (1998).  <u>See also</u> <u>In re Winship</u>, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute th crime with which he is charged"); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 523 (1979) )(jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  <u>Smith v. Horn</u>, 120 F.3d at 416-17 (1997); <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." <u>Smith v. Horn</u>, 120 F.3d at 418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the

25

challenged instruction in a way that violates the
Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

Here, it does not appear that Stepney is challenging the
actual recharge to the jury, nor is he alleging any error in the
charge given to the jurors.  Rather, Stepney complains that he
was denied due process because the recharge was conducted without
him being present at the time.  The record shows, however, that
the trial judge waited for almost two hours for Stepney before
proceeding to answer the jury's question.  Stepney was paged
several times in the court house, and his standby counsel was
present on Stepney's behalf.  In fact, standby counsel made
suggestions to the trial court in response to the jury question.[3]
Therefore, this Court finds no error of constitutional dimension
on the part of the trial court in re-charging the jury without

_____

[3]  The record shows that after the jury instructions were
completed, the judge told Stepney not to go far and to let the
court know where he is at 12:30 in case the jury reaches a
verdict.  (December 19, 2000 Trial Transcript, 103:4-7).  At
noon, the jury asked for clarification of the charges.  The trial
judge gave a copy of the jury's question to both the state
prosecutor and standby counsel.  Standby counsel spoke to the
court with respect to answering the question.  The court paged
Stepney on at least two occasions without response.  After one
hour and 45 minutes, the court answered the jury question without
petitioner present.  However, his standby counsel was present
during this recharge.  (December 19, 2000 Trial Transcript,
103:12-114:13).

Stepney present, and this ground for a writ of habeas corpus will be denied.

D.  The Indictment Failed to Allege Facts Supporting the Elements
     of the Crime of Eluding

        In his fourth ground for habeas relief, Stepney states that his conviction must be reversed because the indictment was defective in that it failed to allege facts supporting all of the substantive elements of the charged offense of eluding.  Stepney raised this claim on direct appeal.  The Appellate Division found this claim to be without sufficient merit to warrant discussion in a written opinion.  (Resp. App. at No. 14, pg. 17).

        The Sixth Amendment guarantees the right to be informed of the nature and cause of the accusation.  The Due Process Clause of the Fourteenth Amendment also requires reasonable notice and information of a specific charge against the accused.  Here, the indictment as issued served these goals.

        The grand jury issued an indictment on a second degree offense of eluding based on the facts that Stepney was operating a motor vehicle on a public street or highway in New Jersey in knowing flight or in an attempt to elude a police officer, namely Officer Rafi, after having received a signal from Officer Rafi to bring the vehicle to a full stop, and by doing so created a risk of death or injury to another, in violation of N.J.S.A. 2C:29-2b.  The indictment clearly alleges facts supporting all of the substantive elements of second degree eluding under N.J.S.A.

27

2C:29-2b.[4]  Thus, there is no basis to Stepney's claim that the
indictment was defective and that it failed to allege facts
supporting the substantive elements of the offense of eluding.
Stepney was fully apprised of the nature and cause of action
against him and the specific charges under state law.

Moreover, Stepney's claim as to the validity of the state
indictment against him, as opposed to the fairness of a trial,
does not typically rise to the level of a constitutional
deprivation because any such claims alleging error in a state
grand jury indictment are rendered harmless by the subsequent
guilty verdict by a petit jury.  See Lopez v. Riley, 865 F.2d 30,
32 (2d Cir. 1989).  See also United States v. Mechanik, 475 U.S.
66, 72-73 (1986); United States v. Enigwe, 17 F. Supp.2d 390, 393
(E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert.
denied, 531 U.S. 1185 (2001).  Here, the petit jury's eventual

---

[4]  N.J.S.A. 2C:29-2b reads:

> Any person, while operating a motor vehicle on any
> street in this State, ..., who knowingly flees or
> attempts to elude any police or law enforcement officer
> after having received any signal from such officer to
> bring the vehicle or vessel to a full stop commits a
> crime of the third degree; except that, a person is
> guilty of a crime of the second degree if the flight or
> attempt to elude creates a risk of death or injury to
> any person.  For purposes of this subsection, there
> shall be a permissive inference that the flight or
> attempt to elude creates a risk of death or injury to
> any person if the person's conduct involves a violation
> of chapter 4 of Title 39 [motor vehicle traffic
> regulation] ... .

conviction of Stepney on a third degree violation of eluding renders harmless Stepney's unsupported claim of a defective indictment.[5]   Accordingly, this claim for habeas relief will be denied for lack of merit.

E.   Jury Verdict Against the Weight of Evidence

Next, Stepney asserts that the jury's verdict with respect to the third degree eluding conviction was against the weight of the evidence.  He claims that the jury found that he did not have the requisite state of mind for a conviction on the charge of eluding.[6]  This claim was raised on direct appeal, but the Appellate Division found it to be without sufficient merit to warrant discussion.  (Resp. App. at No. 14, pg. 17).

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

---

[5]   The petit jury actually found Stepney guilty of a lesser degree offense of eluding under the statute N.J.S.A. 2C:29-2b, likely due to the fact that Stepney was effective in raising a reasonable doubt in the jury's mind that his flight had created a risk of death or injury to another by violating any traffic regulations as required for a second degree conviction.

[6]   Stepney also asserts that the recharge on this offense was prejudicial because he was not present.  This claim has been addressed and denied by this Court in this Opinion, supra.

This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

Here, there is no question from review of the trial record that there was sufficient evidence presented at trial for the jury to convict Stepney on the lesser degree of eluding.  The testimony at trial by Officer Rafi confirms that he had stopped Stepney's vehicle:

> ... Within a minute or two Rafi saw the truck, which had a plywood rear end instead of a tailgate and the license plate mounted on the left bumper.  Rafi activated the overhead lights and siren and pulled out to stop the truck.
>
> When the truck stopped, Rafi left his patrol car and approached on the driver's side while his backup, Officer Richard Larrison, positioned himself on the passenger side. Defendant was seated in the driver's seat, and a young boy seated in the front passenger seat.  Rafi asked for driving credentials, and defendant produced the registration, insurance card and his Division of Motor Vehicles identification card.  After Rafi returned to his police vehicle with the credentials and contacted headquarters, he was told that defendant did not have a valid driver's license and that arrest warrants had been issued the previous day by the Neptune Municipal Court.  Rafi walked back to the truck and told the defendant to shut off the engine.  Defendant refused.  Rafi repeated his instruction, but again defendant refused.  Rafi tried to open the driver's door, but it was locked.  He warned defendant that if he did not cooperate, additional charges would be filed included resisting arrest.  Defendant said that he was afraid for his life and was not going to leave the truck.

30

> Suddenly, he put the truck in gear and accelerated.  Rafi
> and Larrison returned to their patrol cars and pursued
> defendant.

(December 8, 2003 Appellate Division Opinion, Resp. App. at No.

14, pp. 2-3).  These factual findings substantially support every

element of a third degree eluding charge as set forth at N.J.S.A.

2C:29-2b, namely, that Stepney knowingly fled or attempted to

elude the police officer after the officer activated his overhead

lights and pulled Stepney's vehicle over to a full stop.  See

this Opinion, supra, at n. 4.  Therefore, this claim is denied

for lack of merit.

   F.  Sentence is Manifestly Excessive

     Finally, Stepney asserts that his sentence was manifestly

excessive.  Sentencing is generally considered a matter of state

criminal procedure, which does not fall within the purview of

federal habeas review.  United States v. Cepero, 224 F.3d 256,

267 (3d Cir. 2000), cert. denied, 531 U.S. 1114 (2001); Ervin v.

Beyer, 716 F. Supp. 163, 165 (D.N.J. 1989); Grecco v. O'Lone, 661

F. Supp. 408, 415 (D.N.J. 1987); see also Johnson v. Beto, 383

F.2d 197, 198 (5th Cir. 1967), cert. denied, 393 U.S. 868 (1968).

Indeed, absent some constitutional violation, federal courts

cannot review a state's alleged failure to adhere to its own

sentencing procedure.  Rorie v. Beard, Civ.A.No. 04-3380, 2005 WL

825917, *5 (E.D. Pa. April 7, 2005)(citing Branan v. Booth, 861

F.2d 1507, 1508 (11th Cir. 1988)).  Thus, a federal court will

not reevaluate a sentence in a habeas proceeding unless it exceeds the statutory limits.  Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985)("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits."); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").  However, "[w]hile normal sentencing proceedings are not immune from all due process attacks, the Supreme Court has required only minimal due process protections in those proceedings."  United States v. Davis, 710 F.2d 104, 106 (3d Cir.), cert. denied, 464 U.S. 1001 (1983) (citations omitted).

Here, petitioner has not demonstrated that his sentence violates any federal constitutional rights.  First, for purposes of federal habeas review, Stepney's sentence plainly does not exceed the statutory limits for third degree eluding and resisting arrest.  He was placed on probation for three years, and was later sentenced to a prison term for certain violations of probation conditions.  Second, the sentence as imposed does not shock the judicial conscience as even remotely excessive or disproportionate to his offenses.  See Harris v. United States,

32

536 U.S. 545, 557 (2002); <u>Wainwright v. Goode</u>, 464 U.S. 78, 84
(1983).  Thus, Stepney's claim lacks substantive merit, and is
not subject to federal review because it does not demonstrate a
violation of a federal constitutional right.[7]

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of
appealability should issue.  <u>See</u> Third Circuit Local Appellate
Rule 22.2.  The Court may issue a certificate of appealability
only if the petitioner "has made a substantial showing of the
denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For
the reasons discussed above, this Court's review of the claims
advanced by petitioner demonstrates that he has failed to make a
substantial showing of the denial of a constitutional right
necessary for a certificate of appealability to issue.  Thus,
this Court declines to issue a certificate of appealability
pursuant to 28 U.S.C. § 2253(c)(2).

---

[7]  The Court also notes that this claim was raised by
Stepney on direct appeal.  The Appellate Division found the claim
lacked sufficient merit to warrant discussion in a written
opinion.  (Resp. App. at No. 14, pg. 17).

33

V.   <u>CONCLUSION</u>

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


                          <u>s/Stanley R. Chesler</u>
                       _   STANLEY R. CHESLER
                           United States District Judge
DATED: June 6, 2006